UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

JORJ MICHAEL AUSTIN,

                Defendant.

Criminal No. 2:22-cr-20202

Hon. Nancy G. Edmunds
United States District Judge

---

**THE UNITED STATES OF AMERICA'S COMBINED
RESPONSE TO DEFENDANT'S
MOTIONS TO SUPPRESS (R. 79 and R. 80)**

---

Austin has filed a motion to suppress all evidence recovered from Austin's vehicle that he claims was the result of unlawful acquisition of cell site location information (CSLI) and an unlawful search of his car. Neither of these contentions are correct and the Court should deny his motions.

## INTRODUCTION

Austin, a 32-year-old man at the time of his arrest in December 2021, engaged in a pattern of sexual exploitation, abuse, and control over then 16-year-old Minor Victim 1 (MV-1) that began in the summer of 2021 and culminated with Austin kidnapping MV-1 from her father's home in Minnesota in December 2021. Minnesota law enforcement and later the Michigan State Police ("MSP") investigated the missing child report. Their concern increased substantially after

MV-1's mother received a message from MV-1 indicating that both MV-1 and her family were in physical danger from Austin. At that point, MSP received real-time and historical cell site data on an exigent basis for Austin's cellular phone. Less than twelve hours after receiving the real-time cellular phone data, MSP arrested Austin and recovered MV-1. Austin has filed two separate motions to suppress the evidence in this case. The first alleges that the collection of real-time and historical cell site data was unlawful and all evidence recovered from the arrest should be suppressed. The second argues that the police improperly searched Austin's car and the warrant to search the car lacked probable cause. Austin likewise requests a *Franks* hearing.

Neither of these motions have merit. Even if the historical location data was subject to suppression, it would not result in the suppression of evidence from the vehicle, as probable cause supported Austin's arrest and Austin had an active felony arrest warrant when stopped by MSP in a public place. Exigent circumstances supported the acquisition of the cell phone location information, and, in any event, the short-term monitoring of real-time cell phone location information does not require a warrant.

Austin's motion to suppress evidence based on the alleged unlawful search of his car fares no better. Probable cause existed to search the car upon Austin's arrest and law enforcement properly obtained a warrant to search the car and the content

2

of Austin's devices. A *Franks* hearing is not necessary because Austin's complaints regarding the warrant are not relevant to the determination of probable cause. The Court should deny his motions without an evidentiary hearing.

## FACTUAL BACKGROUND

Austin, a 32 year-old man at the time of his arrest, began a sexual relationship with MV-1 in the summer of 2021 after they met at a movie theater where MV-1 worked. Even setting aside the dangerous power dynamic when a grown man "dates" a high school student, this relationship involved Austin's exertion of significant power and control over MV-1. Austin considered himself MV-1's "master" and considered her his "pet slut." Austin frequently requested that MV-1 produce sexually explicit images and send them to him. He also had her send him the money from her paychecks. She eventually was sent to live with her father later in 2021, who lived in Minnesota.

During her time living with her father, Austin and MV-1 remained in contact, with MV-1 continuing to produce sexually explicit images and send them to Austin. One such exchange is below:

<u>11/16/2021 (9:15 PM)</u>

*Austin*: *Send me another one…but longer.  And Master enjoys seeing my pet slut's little pretty puss and ass shaking from the back*

*Austin*: *Ayyyeee…Good girl*

*Austin*: *[sends short video of puppets from a social media application]*

*MV1*: *[sends video of the nude buttocks, anus, and vagina of a young female, believed to be MV1]*

(R. 1: Comp., Pg.ID 4). In another conversation a few days later, when MV-1 questioned Austin retaining her sexually explicit images against her wishes, he told her to "be mindful when you speak to your master." (*Id.* at 5).

On December 20, 2021, MV-1's father woke up at 2:00 a.m. and checked on her. He could not find her and later that morning reported her missing to police. Minnesota police began investigating, but MV-1 left a note indicating that she planned to live in Minneapolis on her own and MV-1's father did not know or suspect she was with Austin.

Law enforcement in Minnesota continued to investigate and on December 22, 2021, MV-1's father received a text message from an unknown number demanding $7,000, insinuating that MV-1 would be killed if he did not receive it. (Austin Bates 8). On December 23, 2021, Minnesota police discovered that two Wisconsin police agencies had run queries on MV-1's name. MV-1 and Austin had been in a car accident on the highway in Wisconsin hours after he took her from her father's

house. Austin lied and told police that he was MV-1's guardian. She could not tell police where they were going to or coming from, and Austin ordered her not to talk to police in the presence of officers. Austin provided Wisconsin law enforcement with a phone number, ending in 8689. After learning of Austin's identity, law enforcement in Minnesota re-interviewed MV-1's mother. She told them that MV-1 had given all her paychecks from her last job to Austin, that she believed that Austin had sexually assaulted MV-1, and that she believed Austin had trafficked MV-1. After receiving this information, Minnesota law enforcement submitted an emergency request for real-time CSLI for the 8689 number on December 23, 2021. Location information for the phone showed that it was in Detroit. Minnesota law enforcement shared Austin's location information with Michigan law enforcement, who observed MV-1 with Austin in the car Austin used to take MV-1 from Minnesota and crashed in Wisconsin. However, Austin fled, and officers were unable to stop the car. Minnesota law enforcement sent their file to Michigan, where law enforcement there began to investigate as well.

Unfortunately, after the attempt to locate Austin on December 23, 2021, the investigation did not regain momentum until December 27, 2021, when the Special Investigative Section (SIS) of the MSP began to work on the case with Minnesota law enforcement. Also on that date, MV-1's father received text messages now

offering to return her for a ransom of $100. On December 27, 2021, Minnesota law enforcement indicated to SIS that they were going to obtain a felony warrant for Austin's arrest for depriving parental rights.  That warrant was signed at 11:48 a.m. on December 28, 2021, by a state district court judge in Minnesota. (Minnesota Comp., Exhibit A). As Minnesota law enforcement and SIS discussed the matter on December 28, 2021, Minnesota law enforcement received additional text messages from MV-1's mother. The text messages were purportedly from MV-1 and marked the first time that she contacted her mother since she had gone missing eight days earlier. The text messages were forwarded to MSP:




(Austin 1582). The messages indicate that Austin had physically assaulted MV-1, that MV-1 feared that Austin would kill her or her family, and that he had been forcing her to do things for him. MSP made an exigent request for historical cell site and real time cell site information for Austin. The tracking began at approximately 2:25 p.m. on December 28, 2021. Law enforcement utilized the historical cell site location records, real-time cell site location records, and discovered a Detroit Police report where Austin was arrested in front of an address in Detroit in 2010. Officers went to that location and observed Austin's car with Austin and a female presumed to be MV-1 inside. Austin was arrested shortly after 11:00 p.m. when he and MV-1 went to a gas station and stopped to get gas at a pump.

Officers conducted an inventory search of the car, removed MV-1's belongings so they could return them to her, and then returned the other items to the car. Officers later obtained a search warrant for the items within the car, including the contents of the cellular phones within the car. The search warrant affidavit noted that: 1) MV-1 had moved to Minnesota because of a suspected grooming relationship with Austin; 2) that Austin and MV-1 had been in a car accident in Wisconsin, wherein Austin claimed that he was her legal guardian, MV-1 used Austin's last name, and that Austin told her not to speak to police; 3) that police observed Austin and MV-1 together on December 23, 2021, but could not stop the car; 4) that MV-

1's mother received texts on December 28, 2021, from MV-1 that MV-1 was in danger; 5) that Troopers observed seven cellular phones in Austin's car; and 6) that MV-1 stated in an interview that between December 20-28, 2021, she was physically assaulted by Austin, that Austin refused to let her leave, that Austin made threats of violence towards her if she called the police, and that there would be nude images of her on Austin's phone. (Search warrant and Affidavit, MV-1's year of birth unredacted, Exhibit B).

The search warrant of the car resulted in the discovery of documents and the search of the cellular phones led to the discovery of multiple instances of Austin sexually exploiting MV-1 and at least one other minor. A grand jury indicted Austin on a superseding indictment for kidnapping of a minor, sexual exploitation of children, attempted sexual exploitation of children, distribution of child pornography, and possession of child pornography. Austin now seeks to suppress the evidence recovered during the search of the car following his arrest.

## ARGUMENT

### I. THE COLLECTION OF AUSTIN'S REAL-TIME AND HISTORICAL CELL SITE INFORMATION SHOULD NOT RESULT IN THE SUPPRESSION OF ANY EVIDENCE

#### A. No evidence is subject to suppression from any alleged violation due to the use of the historical cell site data or real-time CSLI.

The search of the car is sufficiently attenuated from any alleged unlawful collection of CSLI to preclude suppression of evidence. Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote. *Utah v. Strieff*, 579 U.S. 232, 238 (2016). "The attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence, which often has nothing to do with a defendant's actions." *Id.* In evaluating the causal link, the Court considers three factors: temporal proximity between the illegality and the discovery of evidence, the presence of intervening circumstances, and the 'purpose and flagrancy' of official misconduct." *Id.* at 239. All three factors weigh against the suppression of evidence. Specifically, the presence of intervening circumstances—a valid arrest warrant and probable cause to arrest Austin for various offenses—support attenuation. Moreover, the conduct here was not "flagrant" as the officers sought the information through exigent means and then followed up with a later warrant for the information.

Two cases, one from the United States Supreme Court and another from the Seventh Circuit, support the admission of evidence recovered from Austin's car. In *Utah v. Streiff,* 579 US 232, 136 S.Ct. 2056 (2016), the Supreme Court ruled that the existence of an arrest warrant attenuates an unlawful stop and the recovery of evidence flowing from that stop is therefore not subject to suppression. In that case, an officer stopped Streiff without reasonable suspicion that he had committed an offense. After learning Streiff had a warrant for his arrest, the officer searched Streiff and found methamphetamine and drug paraphernalia. The United States Supreme Court reversed the Utah Supreme Court's suppression of the evidence, finding that the discovery of a valid, untainted and pre-existing arrest warrant attenuated the unlawful stop.

In *United States v. Patrick*, 842 F.3d 540 (7th Cir. 2016), the Seventh Circuit denied a defendant's appeal contesting the validity of his arrest and the subsequent recovery of a firearm. In that case, law enforcement utilized a warrantless application of a cell-site simulator to locate Patrick. Patrick had an active warrant at the time and was in a car on a public street when arrested. The arrest resulted in the recovery of a firearm. The court denied Patrick's claim that suppression was required because of the warrantless use of a cell-site simulator.

The court first noted that because Patrick was visible to the general public, he

10

did not have any privacy interest in his location. *Id.* at 542. As the court recognized, under *Streiff* if police had stopped Patrick for no reason at all and learned of the warrant, the evidence would be admissible. It would make little sense for evidence recovered by officers who *know* about the warrant and arrest him in a public place to be less admissible. The court noted:

> A person wanted on probable cause (and an arrest warrant) who is taken into custody in a public place, where he had no legitimate expectation of privacy, cannot complain about how the police learned of his location… probable cause to arrest Patrick pre-dated the effort to locate him… A fugitive cannot be picky about how he is run to ground.

In another recent case, a court again distinguished between cell site location "used to apprehend, rather than surveil" when upholding the warrantless use of prospective cell site information. *United States v. Hall*, No. 4:22-CR-40053-JPG, 2023 WL 7678733, at *4 (S.D. Ill. Nov. 15, 2023).

The rulings and reasoning in *Streiff* and *Patrick* compel the same outcome here. Austin had an active felony arrest warrant and there was probable cause to arrest Austin for other offenses separate from any CSLI that Austin argues was unlawfully obtained. Therefore, when agents observed Austin in a public place, they could lawfully arrest him, and any evidence recovered from that arrest should not be suppressed. The only cell-site location used to create probable cause for the arrest or warrant occurred when

11

Austin concedes that any active cell-site location was exigent on December 23, 2021. Austin must concede that an arrest warrant was obtained, and probable cause existed to arrest him, separate from any alleged unlawfully obtained cell site location information. Minnesota law enforcement obtained their arrest warrant *before* any historical or real-time CSLI were obtained on December 28, 2021.

And even without the CSLI information obtained on December 23, 2021, there would still be ample probable cause for the Minnesota arrest warrant and probable cause for an arrest for unlawful imprisonment, assault, and other offenses in Michigan. The probable cause for unlawful imprisonment in the state of Michigan stems from the totality of the circumstances, including the car accident in Wisconsin, the messages received for ransom, and the messages MV-1's mother received describing that MV-1 was being held against her will in Hamtramck and that their family was in danger. Because law enforcement obtained probable cause (and an arrest warrant) completely separate from any allegedly unlawful phone-location information and observed and approached Austin in a public place, there is no grounds to suppress any evidence. The independently obtained probable cause and arrest warrant sufficiently attenuated any allegedly unlawful acquisition

of cell site records. A probable cause search, inventory search, or *Gant* search of the car was appropriate following Austin's arrest. Therefore, regardless of whether the cell-phone location data was obtained lawfully, the Court should not suppress any evidence on that basis.

### B.   No warrant was required for the short-term monitoring of real-time CSLI.

*Carpenter v. United States*, 585 US 296 (2018) holds that—absent exigent circumstances—the Fourth Amendment requires a warrant for historical CSLI. The Supreme Court explicitly declined, however, to decide whether "real-time CSLI" requires a warrant. *Id.* at 316. While some of the records obtained in this case involve historical cell site information, much of the location information was obtained from real-time cell site information. In a pre-*Carpenter* decision, the Sixth Circuit found that a seven-hour real-time tracking of a defendant's GPS location of his cellular phone did not constitute a search. *United States v. Riley*, 858 F.3d 1012, 1018 (6th Cir. 2017). Only one circuit has reached a decision on real-time CSLI since *Carpenter*. In *United States v. Hammond*, 996 F.3d 374 (7th Cir. 2021), the Seventh Circuit found that short-term monitoring of real-time CSLI did not require a warrant when tracking an individual for whom there was probable cause to arrest and the search was limited to law enforcement's ability to locate the defendant on public roadways.

13

In a similar case, a district court found that society does not recognize that an individual in the midst of an alleged child abduction has a reasonable expectation of privacy in real-time CSLI for a period of 18 hours as he travels on public highways. *United States v. Castellanos*, No. 1:21-CR-348-TWT-JKL, 2023 WL 2466789, at *9 (N.D. Ga. Feb. 17, 2023), report and recommendation adopted, No. CV 1:21-CR-348-TWT, 2023 WL 2471337 (N.D. Ga. Mar. 10, 2023). Nothing about Austin's abduction of MV-1 here, where he enticed, coerced, and inveigled her across state lines leading to physical and sexual abuse, shows that he is more deserving of a privacy interest than defendant Castellanos.

Law enforcement received the second, exigent piece of information at approximately 2:25 p.m. and arrested Austin just after 11:00 p.m. Less than nine hours worth of real-time CSLI does not establish a privacy interest, especially when coupled with the fact that, like in *Hammond*, law enforcement had an active warrant for his arrest for most of that time and probable cause to arrest him for felonies during that time. While the use of exigently obtained historical CSLI in this circumstance complicates this analysis, the analysis as it relates to the real-time CSLI aligns with *Hammond*, as this was short-term tracking of an individual with a warrant apprehended in a public place.

### C.   Exigency allowed for the use of the historical CSLI and real time CSLI until law enforcement obtained a warrant.

Law enforcement also had the ability to obtain the real-time CSLI and the historical cell site information without a warrant because MV-1's messages to her mother on December 28, 2025 created a new, more extreme exigency. Law enforcement may have had much of the information related to Austin's actions for some time, but when MV-1 sent messages wherein she told her mother "I've seen with my own eyes how dangerous he is" and that he was going to harm her or her family and she wanted it to be "just her," it created a new, more dangerous exigency. Regardless of whether officers could have acted earlier to obtain a cell site location warrant, they needed to act urgently once MV-1's mother received these messages directly from MV-1. Law enforcement acted reasonably in getting the location information in the fastest way possible. At that time, law enforcement resources were placed where they should have been—obtaining the records as quickly as possible and locating MV-1. Law enforcement appropriately used the CSLI to find an abducted minor they believed in imminent danger of serious physical injury or death.

Other courts have found the exigent circumstances exception applies to the tracking of a suspect's cell phone location in cases involving children. *See, e.g., United States v. McHenry*, 849 F.3d 699, 706 (8th Cir. 2017) (holding that exigent circumstances justified the warrantless request for real-time location data to locate a

15

juvenile victim of sex trafficking); *United States v. Gilliam*, 842 F.3d 801, 805 (2d Cir. 2016) (holding that exigent circumstances justified obtaining GPS location information where defendant was suspected of prostituting a missing child across state lines). There is no reason that Austin's situation was any less exigent after the text messages indicated imminent harm.

###  D.   The historical cell site data can be introduced at trial due to the independent source doctrine and inevitable discovery.

Even if the Court finds that historical CSLI was unlawfully obtained before Austin's arrest, it should not be suppressed at trial because law enforcement obtained a later warrant for the same information after his arrest. The independent source doctrine applies when the government obtains the evidence "wholly independent of any constitutional violation." *United States v. Jenkins*, 396 F.3d 751, 758 (6th Cir. 2005). After Austin's arrest, Detective Ellsworth of the Michigan State Police obtained the historical cell site records for Austin's phone through a warrant. While the warrant references the location information obtained on December 28, 2021, in one paragraph, the warrant provides probable cause, separate from any alleged unlawful receipt of cell phone location information, to obtain these records. The affidavit outlines the entire investigation, including the missing person report, the texts MV-1 sent to her mother regarding Austin's assault, statements made by MV-1, and the car accident in Wisconsin wherein Austin and MV-1 were identified as

16

being together. (Exhibit C, Ellsworth Aff.) The warrant establishes probable cause to obtain the historical cell site records wholly apart from any alleged constitutional violations. Therefore, those records should be admissible at trial as well.

## II.   The Search of Austin's Car and Electronics was Lawful and no Franks Hearing is Required

The police lawfully searched Austin's car and the warrant was supported by ample probable cause. Austin's contentions otherwise disregards case law regarding vehicle searches, raises irrelevant points, and ignores nearly every relevant fact that existed at the time of his arrest. His request for a *Franks* hearing lacks merit, too.

### A.   Probable cause existed to search Austin's car.

Although Austin argues at the length about the vagaries of inventory searches, he ignores the obvious—that officers had probable cause to search the car when they arrested Austin. Automobiles are an exception to the warrant requirement when probable cause exists. *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). It does not matter whether or not the officers refer to it as an inventory search, it only matters whether objective probable cause existed to search the car. *See United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir.2011) ("A police officer's subjective reasons for a search do not control the legal justification for his actions, as long as objective circumstances justify the search.")

Here, officers arrested Austin when he had a felony warrant from Minnesota

17

for deprivation of custody. That felony warrant was based on probable cause that he committed that offense. Probable cause existed to search the vehicle for evidence that Austin had taken her from Minnesota and threatened her, such as receipts or other items indicating travel, and any other items within the car that could have constituted evidence of that offense. They likewise had probable cause that he had committed numerous offenses in Michigan, including unlawful imprisonment, criminal sexual conduct, and assault. Officers had the legal ability to search the entire car because they had probable cause to do so.

###    B.    An inventory search was appropriate to seize and search the car.

While there is no reason to even conduct an analysis of whether this qualifies as an inventory search, it qualified as an inventory search.

The Fourth Amendment permits impoundment decisions and inventory searches that are "objectively justifiable, moreover, regardless of an officer's subjective intent." *See Whren v. United States*, 517 U.S. 806, 812 (1996). The impoundment/inventory decision in the case at bar was objectively justifiable, and the trial court's application of the inevitable discovery doctrine was entirely proper." *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001).

Michigan law specifically authorizes the impoundment of vehicles from both public and private property: "A police agency . . . may provide

for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last titled owner of the vehicle . . . If the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime." Mich. Comp. Laws § 257.252d(1)(e). The statute includes a Fourth Amendment "reasonable cause" standard that was met in this case. There is no additional requirement under Michigan law that impoundment must also be made pursuant to a departmental policy (though it was in this case). Because there was reasonable suspicion the car was used in a crime, impounding Austin's car was appropriate, which would require an inventory search.

Here, the car was nevertheless properly impounded pursuant to MSP policy. When Austin was arrested, his car was parked in front of a gas pump and cornered into it. The vehicle was therefore not "lawfully parked" pursuant to the MSP inventory policy and was instead subject to towing and inventory. (R. 80: Def. Mot, Pg.ID 577). The inventory policy submitted by Austin does not support his argument. The car was in a location where it would be "hampering the use of private property by the owner or person in charge of that property," and therefore remained subject to impounding and therefore inventory search. (*Id.* at 579). The vehicle could be properly seized and searched pursuant to probable cause, but the inventory search

policy nevertheless supports the search of the car.

### C. A search of the car was appropriate under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009)

Under *Arizona v. Gant*, law enforcement can search a car if "it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Gant,* 556 U.S. at 351. At the very least, Austin was arrested for a warrant out of the state of Minnesota for interference with custody of MV-1. With MV-1 being recovered from the car as well, it was incredibly reasonable that evidence in the car would show the length of her presence in the car, the path they took to get to Detroit, how long MV-1 and Austin had been together, as well as other evidence demonstrating that Austin was the one who took MV-1 from Minnesota to Detroit.

### D. The search warrant to search the car was supported by probable cause and no *Franks* hearing is necessary.

Austin's attempt to defeat the search warrant based on a lack of probable cause is bereft of any factual or legal support. His request for a *Franks* should be denied because of the irrelevancy of the issue that he raises to probable cause. The search warrant was lawfully obtained and supported by probable cause.

#### 1. The search warrant contained probable cause to seize items in the car and search Austin's electronic devices.

The search warrant affidavit contained ample probable cause to support a search of Austin's car and the contents of electronic devices recovered within the

20

car. The Fourth Amendment prohibits the issuance of a search warrant without probable cause. U.S. Const. Amend IV. Probable cause exists when there is "'a fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (citation omitted). The probable cause determination is concerned with probabilities, not hard certainties. *See United States v. Cortez*, 449 U.S. 411, 418 (1981).

Probable cause is generally defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc). The doctrine "is a flexible, commonsense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). The Supreme Court has described probable cause as existing where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the location to be searched. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Probable cause requires only a showing of a "fair probability" that contraband or evidence of crime will be found. *Illinois v Gates*, 462 U.S. 213, 238, 244 n.13 (1983). Additionally, the probable cause showing "does not demand any showing that such a belief be correct or more likely true than false." *Brown*, 460 U.S. at 742.

21

Probable cause must be "judged from the totality of the circumstances." *United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007) (internal quotations and citation omitted) (noting that the Supreme Court has rejected a "grudging or negative attitude by reviewing courts toward warrants."). The affidavit must demonstrate a connection between the item to be searched and the evidence sought. *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). The Supreme Court has counseled that in close calls, doubtful warrants should be upheld because it will have the effect of encouraging law enforcement officers to seek warrants. *Gates*, 462 U.S. at 237 n.10. "Reviewing courts are to accord the magistrate's [probable cause] determination great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (internal quotations and citation omitted). "[T]he duty of a reviewing court is simply to insure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 at 238-39. Thus, once a magistrate has determined the existence of probable cause, that decision should only be reversed if it was arbitrarily made. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). This deferential standard "further[s] the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984).

The affidavit contained probable cause that Austin committed numerous

22

offenses outlined in the affidavit, including unlawful imprisonment, criminal sexual conduct, and possession of child sexually abusive material. It contained the following information: 1) MV-1's father learning that she was missing and had left a note; 2) the car accident with MV-1 and Austin in Wisconsin where he told officers he was her legal guardian, she used his last name, and he ordered her not speak to officers; 3) officers observing Austin in Detroit on December 23, 2021 with MV-1 in the car; 4) texts received by MV-1's mother that she was in danger; 5) that Wisconsin authorities observed seven phones in Austin's car; 6) that an officer conducting an inventory search had observed journals and cellular phones in the car; 7) an interview with MV-1 where she told police Austin had sexual intercourse with her, physically assaulted her, held her against her will, received threats of violence against her if she called the police, and that he had naked images/videos of her on his phone. (Ex. B, Search Warrant Aff.) The affidavit sets forth evidence that far surpasses the standard for probable cause. It does not present a close call.

Yet Austin claims that the probable cause for the warrant is supported by the alleged unlawful inventory search, an argument that lacks merit. First, any prior search of the car was likewise supported by probable cause. Second, the inventory search was proper. Third, the warrant provides probable cause to search the car even if the paragraph regarding the officers' observations of the phones were excised. The

affidavit notes that there were numerous phones observed in the car at the Wisconsin accident, and MV-1 stated that Austin had nude pictures of her on his phones. There is probable cause separate from the original search, which was lawful regardless.

### 2. The timing of the seizure of the phones is wholly irrelevant to the issue of probable cause and a *Franks* hearing is unnecessary.

Austin has failed to show a basis for a *Franks* hearing. He requests a *Franks* hearing based on the alleged inconsistency about when the police seized the phones. But under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant has a "limited right to an evidentiary hearing concerning the veracity of [an] affidavit" supporting a search warrant. *United States. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). "In the case of alleged material omissions—by analogy to the standard for included false statements—the defendant is entitled to a hearing if and only if (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or a reckless disregard for the truth in omitting the information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be part of it." Id. (internal citations and quotation marks omitted); *see also United States v. Fisher*, 824 Fed. App'x. 347, 353 (6th Cir. 2020) ("When there is a material omission of fact, a Franks hearing is granted only if the defendant makes a strong preliminary showing that the affiant

24

with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause.") (Internal citations and quotation marks omitted, italics in original).

The Sixth Circuit "has repeatedly held that there is a higher bar for obtaining a Franks hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *Fowler*, 535 F.3d at 415. This is because of the "potential for endless rounds of Franks hearings due to potentially endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." Id. (internal citations and quotation marks omitted). A "substantial preliminary showing" means that the "challenger's attack must be more than conclusory . . . there must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient." *United States v. Martin*, 920 F.2d 393, 398 n.5 (6th Cir. 1990). If a defendant meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause." Id. A *Franks* hearing is difficult to obtain because there is "a presumption of

validity with respect to the affidavit supporting the search warrant." *United States v. Riddick*, 134 F. App'x. 813, 818–19 (6th Cir. 2005) (quoting *Franks*, 438 U.S. at 171).

Because probable cause existed to search the car, Austin's complaint that the phones were removed from the car at some point and shown to MV-1 is irrelevant. Even if the phones were removed before the warrant issued, showing phones to MV-1 to see if they were hers makes sense. Austin would have no privacy interest in any phone that belonged to MV-1 and there is no reason that law enforcement should not be able to do so. Regardless, no statement about MV-1 identifying the phones is even in the affidavit. There is no reason to suppress any evidence based on Austin's allegations even if they are true. The alleged omissions here—that MV-1 was shown cellular phones or that phones were removed from the car at some point—are wholly irrelevant to whether there was probable cause to issue the warrant. A *Franks* hearing on this issue, which has no relevance to whether there was probable cause to search the car or the electronics, is entirely unnecessary.

### 3. Any alleged search of Austin's phones the prior to the warrant is irrelevant.

The government does not believe that there was any search of Austin's phones prior to the execution of the warrant. But even in the event there was one, it also would not be a basis for suppression here. There is no evidence that the contents

of any phone were used to obtain the warrant, that the contents of any of Austin's phones were discussed with MV-1, or that any alleged unlawful search of the phone affected the decision to obtain a warrant. The officer glancing at a phone before placing it back in the car is not a basis for suppression. Even if there was some unlawful viewing of the phone—which the government does not concede—the search warrant provides a lawful independent source to obtain its contents.

### 4.  The unredacted warrant contained MV-1's date of birth.

Austin's last desperate heave to invalidate the warrant is to argue that MV-1's date of birth is not on the redacted warrant and there is no reason to believe that she was underage. A warrant with MV-1's year of birth unredacted is included as an exhibit to this response. (Exhibit B, Search Warrant Affidavit). That demonstrates that she was a minor, which means that the possession of sexually explicit images of her constitutes a criminal offense.

### III.  CONCLUSION

Austin raises issues related to cellular phone location information which, under other circumstances, may cause a court to engage in a lengthy analysis of potential exigencies, the Fourth Amendment applicability of real-time CSLI, and the interplay between the use of real-time CSLI and historical CSLI in potentially exigent circumstances. But in this situation, where probable cause existed to arrest

Austin *and* a valid arrest warrant supported without any alleged unlawfully obtained CSLI, where Austin is observed and later arrested in a public place, it is a simple analysis.  The evidence obtained from Austin's arrest is admissible.

Austin's remaining complaints about the search and seizure of the car ignore the automobile exception, misread the inventory police of the MSP, and highlight irrelevant information. The Court should deny his motions.

<div style="margin-left:40%">

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

s/CHRISTOPHER W. RAWSTHORNE
Christopher W. Rawsthorne
Assistant United States Attorney
600 Church Street, Suite 210
Flint, MI 48502
(810)  766-5177
Email: Christopher.rawsthorne@usdoj.gov

</div>

Date: May 6, 2025

28

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 6, 2025, the foregoing document was served via

filing by the ECF system:

James Amberg

<div style="text-align: right;">

*<u>/s Christopher W. Rawsthorne</u>*
Christopher W. Rawsthorne

</div>