UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JORJ MICHAEL AUSTIN,

    Defendant.

_____/

Case No. 22-20202

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S
MOTIONS TO SUPPRESS EVIDENCE [79][80]**

Defendant Jorj Michael Austin is charged in a seven-count superseding indictment with two counts of attempted sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a) and 2251(e) (Counts One and Five); two counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) (Counts Two and Three); distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Count Four); kidnapping of a minor in violation of 18 U.S.C. §§ 1201(a) and 1201(g) (Count Six); and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Seven). (ECF No. 63.) The matter is now before the Court on Defendant's motions to suppress evidence. (ECF Nos. 79, 80.) The government opposes the motions. (ECF No. 83.) The Court held a hearing on June 2, 2025. For the reasons below, the Court DENIES Defendant's motions.

**I.**  **Background**

Defendant, who was 32 years old at the time of his arrest, began a relationship with a minor victim ("MV-1"), who was 16 years old, in the summer of 2021. She was eventually sent to live with her father, who lived in Minnesota, later that year. During her time living with her father, Defendant stayed in contact with MV-1.

1

On December 20, 2021, MV-1's father woke up at 2:00 a.m. and checked on her. He could not find her and later that morning, he reported her missing to police. MV-1 had left a note indicating that she planned to live in Minneapolis on her own.

On December 22, 2021, MV-1's father received a text message from an unknown number demanding $7,000 and insinuating that MV-1 would be killed if the money was not sent. On December 23, 2021, Minnesota police discovered that two Wisconsin police agencies had run queries on MV-1's name. MV-1 and Defendant had been in a car accident on the highway in Wisconsin hours after he took her from her father's home. Defendant told police that he was MV-1's guardian. She could not tell police where they were going to or coming from, and Defendant ordered her in the presence of the officers not to talk to them. Defendant provided Wisconsin law enforcement with a phone number ending in 8689. After learning of Defendant's identity, law enforcement in Minnesota re-interviewed MV-1's mother. She told them that MV-1 had given all her paychecks from her last job to Defendant, that she believed that Defendant had sexually assaulted MV-1, and that she believed Defendant had trafficked MV-1. After receiving this information, Minnesota law enforcement submitted an emergency request for real-time CSLI for the 8689 number on December 23, 2021. Location information for the phone showed that it was in Detroit. Minnesota law enforcement shared Defendant's location information with Michigan law enforcement, who observed MV-1 with Defendant in the car that Defendant used to pick up MV-1 from Minnesota and crashed in Wisconsin. Defendant fled, however, and officers were unable to stop the car. Minnesota law enforcement sent their file to Michigan, where law enforcement there began to investigate as well.

On December 27, 2021, MV-1's father received text messages offering to return her for a ransom of $100. The next day, at 11:48 a.m., a state district court judge in Minnesota signed a felony warrant for Defendant's arrest for depriving parental rights. (ECF No. 83-2.) Later that day, MV-1's mother forwarded to Minnesota law enforcement additional text messages she had received from MV-1, indicating that Defendant had physically assaulted her, that she feared defendant would kill her or her family, and that Defendant had been forcing her to do things for him. Those messages were forwarded to Michigan state police ("MSP"). MSP made an exigent request for historical cell site and real time cell site information. According to the government, the tracking began at approximately 2:25 p.m. that afternoon. Law enforcement utilized the tracking information and discovered a Detroit police report where Defendant was arrested in front of an address in Detroit in 2010. Officers went to that location and observed Defendant's car with Defendant and a female presumed to be MV-1 inside. Defendant was arrested shortly after 11:00 p.m. when he and MV-1 went to a gas station and stopped to get gas.

Officers conducted a search of the car, removed MV-1's belongings so they could return them to her, and then purportedly returned the other items to the car. Officers later obtained a search warrant for the items in the car, including the contents of the cellular phones that were found. The search warrant affidavit noted that: 1) MV-1 had moved to Minnesota because of a suspected grooming relationship with Defendant; 2) Defendant and MV-1 had been in a car accident in Wisconsin after which Defendant claimed to be MV-1's legal guardian, MV-1 used Defendant's last name, and Defendant told MV-1 to stay quiet; 3) police observed Defendant and MV-1 together on December 23, 2021 but could not stop the car; 4) MV-1's mother received texts on December 28, 2021 from MV-

3

1, indicating that she was in danger; 5) troopers observed seven cell phones in Defendant's car; and 6) MV-1 stated in an interview that over the course of eight days, she was physically assaulted, held against her will, and threatened by Defendant, and that there would be nude images of her on Defendant's phones. (ECF No. 83-3.)

## II. "Motion to Suppress Evidence Stemming from Unlawfully Obtained Cell Site Location Data" [79]

Defendant argues that his location was discovered unlawfully because officers did not have a warrant to obtain and use his cell-site location information ("CSLI"). The government responds by arguing that the search of the car was sufficiently attenuated from any alleged unlawful collection of location information. Alternatively, the government argues that no warrant was required for the short-term monitoring of real-time CSLI,[1] exigency allowed for the use of historical and real-time CSLI until law enforcement obtained a warrant, and the historical cell site data can be introduced at trial due to the independent source and inevitable discovery doctrines.

Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been

---

[1] In *Carpenter v. United States*, 585 U.S. 296, 316 (2018), the Supreme Court held that a warrant is generally required prior to obtaining historical CSLI but declined to decide whether a warrant is needed for real-time CSLI. In a pre-*Carpenter* decision, the Sixth Circuit found that a seven-hour tracking of the real-time GPS coordinates of the defendant's cell phone did not constitute a search. *See United States v. Riley*, 858 F.3d 1012, 1018 (6th Cir. 2017). The Sixth Circuit has not revisited the issue since *Carpenter*. In a post-*Carpenter* case, the Seventh Circuit found that an officer "did not conduct a Fourth Amendment 'search' by requesting the real-time CSLI of a suspect for multiple armed robberies, for whom officers had probable cause, where the officers only collected real-time CSLI for a matter of hours while the suspect travelled on public roadways, and law enforcement limited its use of the CSLI to the purpose of finding the armed suspect who they had reason to believe was likely to engage in another armed robbery." *See United States v. Hammond*, 996 F.3d 374, 391-92 (7th Cir. 2021).

interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (internal quotations and citation omitted). In *Strieff*, the Supreme Court found the discovery of a valid arrest warrant a sufficient intervening event to break the causal chain between an unlawful stop and the discovery of drug-related evidence on the defendant's person. *Id.* at 239. The Court reasoned that even though the short timespan between the unlawful conduct and the discovery of evidence weighed in favor of suppression, the intervening circumstances and the lack of purposeful or flagrant conduct on the part of the police weighed in favor of the government. *Id.* at 239-42.

Here, there was a valid warrant for Defendant's arrest that predated the use of CSLI on December 28, 2021, to locate him. Unlike in *Strieff*, however, the officers already knew of the warrant. But other courts have found that the attenuation doctrine remains applicable despite this distinction. In *United States v. Patrick*, 842 F.3d 540, 545 (7th Cir. 2016), the Seventh Circuit explained such a finding as follows:

> A person wanted on probable cause (and an arrest warrant) who is taken into custody in a public place, where he had no legitimate expectation of privacy, cannot complain about how the police learned his location. Recall that the cell-site simulator (unlike the GPS device in *Jones*) was not used to generate the probable cause for arrest; probable cause to arrest Patrick predated the effort to locate him. From his perspective, it is all the same whether a paid informant, a jilted lover, police with binoculars, a bartender, a member of a rival gang, a spy trailing his car after it left his driveway, the phone company's cell towers, or a device pretending to be a cell tower, provided location information. A fugitive cannot be picky about how he is run to ground.

The Court finds this reasoning persuasive. Even the dissenting judge in *Patrick* acknowledged that "*Strieff* contains language that could be stretched to suggest that a

5

warrant's existence, regardless of the actual causal chain, is sufficient attenuation." *Id.* at 550. And while the charge underlying the warrant was arguably related to the investigation leading to Defendant's arrest, the text messages shared by MV-1's mother with law enforcement on December 28, 2021, made the nature of the charges more serious and may have altered how officers chose to locate Defendant. Thus, the record does not support a finding of police misconduct. In sum, because the attenuation doctrine applies here, the suppression of evidence stemming from any unlawful collection of location information is inappropriate.

Alternatively, the Court finds the collection and use of CSLI to locate Defendant justified due to exigent circumstances. Defendant notes that there was an earlier exigent request for CSLI submitted by Minnesota police on December 23, 2021, to argue that five days is sufficient time to obtain a warrant. But the Court agrees that the text messages received on December 28, 2021, indicating a minor victim was at risk of physical harm created a new exigency. Because there was both an exigency and probable cause to believe that Defendant had committed multiple offenses in Michigan, such as unlawful imprisonment and assault, the exigent circumstances doctrine applies as well. Thus, Defendant's motion to suppress evidence stemming from the collection and use of the cell site location data is denied.[2]

---

[2] In light of the Court's findings regarding the attenuation and exigent circumstances doctrines, there is no need to address the issue of whether a warrant was required prior to monitoring Defendant's real-time CSLI or whether the independent source and inevitable discovery doctrines apply here.

### III. "Motion to Suppress Evidence Stemming from the Search of the Defendant's Vehicle and Request for Evidentiary and *Franks* Hearing" [80]

Defendant takes issue with the seizure and search of his vehicle following his arrest and the warrant that was later obtained for the search of the vehicle. The government responds by arguing that both the search and the search warrant were supported by probable cause.[3]

Defendant first argues that the vehicle was improperly seized. He points to the MSP procedure manual, which allows for the release of a vehicle to a passenger when the driver is subject to a custodial arrest. Here, Defendant had indicated to officers that he could have someone come pick the vehicle up. But a violation of procedure does not lead to a finding that a defendant's constitutional rights were violated. And "[t]he automobile exception permits police to stop and search a car without a warrant if they have probable cause to believe it contains contraband." *United States v. Arnold*, 422 F. App'x 207, 210 (6th Cir. 2011) (citing *Carroll v. United States*, 267 U.S. 132, 149 (1925)). Not only did officers arrest Defendant pursuant to a warrant from Minnesota for deprivation of custody, but there was also probable cause that Defendant had committed numerous offenses, including unlawful imprisonment and assault, in Michigan. Probable cause, therefore, existed to search the vehicle for evidence of all those offenses. Thus, the evidence seized was lawfully obtained.

The Court next considers the search warrant that was obtained prior to the search of the contents of the phones. Defendant argues that it appears that the phones were

---

[3] The government also argues that an inventory search was appropriate, and the search of the vehicle was appropriate under *Arizona v. Gant*, 556 U.S. 332 (2009). But the Court need not address these arguments.

7

shown to the victim during an interview that followed his arrest even though the affidavit indicates that the phones were still in the vehicle in the impoundment lot. But any misstatement in the affidavit regarding the timing of the seizure of the phones and their location is not material, so there is no need for a *Franks* hearing. *See United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). Even without the statement regarding the "inventory search" and officers' observations of several cellular phones inside the vehicle, there was enough information in the affidavit to support a finding of probable cause.

In sum, not only was the seizure and search of the vehicle supported by probable cause but the warrant itself was supported by probable cause as well.

## IV. Conclusion

For the reasons set forth above, Defendant's motions to suppress are DENIED.

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: July 1, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 1, 2025, by electronic and/or ordinary mail.

        s/Marlena Williams
        Case Manager